today is United States v. Amanda Cowette case number 221534. Counsel for appellant, please step up to the podium. Hi, good morning, your honors. My name is Hunter Tavares. I'm a lawyer up in Bangor, Maine. I'm representing the appellant, Amanda Cowette, in this case. I'm not asking to reserve any rebuttal time. So the question in this case, your honors, is did Amanda unambiguously invoke her right to counsel after being read her Miranda rights? And the Supreme Court's offered guidance on how to determine if an invocation of counsel is unambiguous. In Davis, the court said it's whether the statement would be reasonably construed by a reasonable police officer that a person's asking for an attorney. Davis also said the person doesn't have to respond. The Supreme Court has previously said in another case in Connecticut v. Barrett that a statement should be read or determined as ordinary people speak and interpreted broadly rather than narrowly. So what happened in this case is there's no question Amanda was in custody. She was taken to a police car. She was read her Miranda rights. Midway through her Miranda rights, as soon as the officer told her she had a right to an attorney, she said, quote, I guess my best bet would probably be to not talk until I have a lawyer. The officer goes on to finish reading Miranda. And after immediately finishing Miranda, Amanda says, quote, I mean, I guess I should probably wait until I have a lawyer. That sounds like the best idea. And then the officer has a brief exchange where he says, well, this is really up to you. Do you want to talk or not? And Amanda says, again, quote, I guess, I guess not. I guess I will wait until I have a lawyer. I don't think, I suggest, Your Honors, it really can't be much more clear. How is that different from Davis where the phrase was, maybe I should get a lawyer? Well, it's different, Your Honor, than Davis because of the context of when that was said in Davis. In Davis, the defendant was read Miranda. At the beginning, the defendant waved both orally and in writing. And then in Davis, it was an hour and a half into the interrogation where the suspect or the defendant said, maybe I should talk to a lawyer. The officer asked some sort of follow-up question. And the person in Davis said, this is right from the case, no, I'm not asking for a lawyer. No, I don't want a lawyer. And then the interrogation continued. So here, Amanda, right from the start, she didn't indicate that she wanted a lawyer, I suggest, three times. And when the officer followed up, she didn't say, no, I don't want a lawyer. She said, I guess not. I guess I will wait until I have a lawyer. So I think it's much different than the circumstances and just the statements made or expressed by Ms. Collette. I don't think there's- I noticed when you chronicled the standard that's applicable here, you didn't quote any First Circuit cases. And as you know from your briefing, the language unequivocal or clear has been used in our cases in describing the decisions that just need to be made. In not quoting, are you suggesting there's some variance between what the Supreme Court has called for in Davis and what our circuit has traditionally applied? No, Your Honor. I think the standard is the same. I didn't mean to give that impression. And I think this is, whether you use the term unambiguous or clear or unequivocal, these statements would meet all of that definition. I mean, remember, too, in this case, the standard is whether a reasonable police officer would think a person's invoking their right to counsel. And the lieutenant who read Miranda after Amanda twice or three times said she wanted to have a lawyer, he ceased any questioning because, as a reasonable police officer, he did believe that she was invoking her Miranda rights. And I think that makes it different than these other cases where the officer that was doing the interrogation did not cease questioning. So there wasn't that, I guess, real-time understanding that the person was invoking Miranda, as we have here. That would turn into something of a two-edged sword, wouldn't it, if... Say that again. Sorry. That would be a little bit of a two-edged sword, wouldn't it, because in most cases, the officer is going to be testifying that they thought the person, they didn't realize the person had asked for a lawyer or the like. And so if we give way to the officer's subjective interpretation at the scene to indicate what a reasonable officer would say, we might start cutting more in the other direction, not in this case, but in other ones. I understand. I understand it's an objective standard, but I think that it speaks to the objectiveness of the request that, in this situation, the officer, as well, there's no indication he wasn't a reasonable police officer, believed that she was invoking Miranda, and that's why he didn't question her further. What are we to say that a reasonable officer would make of the words, I guess? Because I think your argument is that her statement is the equivalent of simply saying, I will wait for a lawyer. And you basically say we should ignore my guess as throat clearing of some type. Right. I think the court should look at the phrase, I guess, as just being the way that people talk, perhaps in stressful situations. And I think there could be cases where I guess could be ambiguous or unclear, but it's not in this case. Because it's not just I guess that she said, I want a lawyer. She also followed up by saying it was her best bet. Then she's asked again if she wants to have a lawyer, and again she uses that term, I guess, but then says that it's the best idea to have a lawyer. And then at the very end, the last time, I think it makes it even more clear when the officer says, well, do you want to talk now or not? And she says, I guess not. And then she says, I guess I will wait to have a lawyer. So in the context here, the I guess doesn't make it ambiguous. What do you have to say? Because at some point after she had said I guess, maybe twice, she started volunteering information. Well, Your Honor, she didn't volunteer information. It was three times that she wanted to have a lawyer. Afterwards, the officer had some exchange about what the charges were going to be, and she asked a question about how did she get those charges. And then the officer left her in the cruiser vehicle for a while. And then it was later, I know the government cites this in the brief, it was later that they, Amanda said, all right, I'll talk now. But that was after they brought her into the house where they were executing the search warrant, told her what they had found, asked for the combination to the safe. And then she said, I guess I'll talk now. And the officer actually said, well, we're not going to ask you any questions because you invoked your Miranda rights before. But if she invoked, assuming she invoked them, and she said, I guess I'll talk now, isn't she undoing whatever, you know, rights you had invoked first? It would depend on who initiated the questioning at that point. The district court didn't get to that issue because it only decided the issue before us the district court was that she had invoked her rights. And once she invoked her rights, law enforcement can't reinitiate interrogation. OK, so the question I'm asking you, then, if we were to find that she had invoked her rights, then the case would have to get remanded for that other prompt to see if she voluntarily, spontaneously then decided to start speaking, correct? Correct. Because the district court didn't decide that issue, although it was argued and briefed below. So if I can focus you in on that, the one statement, I think she says that small bag of fentanyl is mine. Your position is, well, let's assume she invoked. Yes. Would the invocation cover that? Or is your position that would have to be briefed, that particular statement? The invocation would invoke that because the statement about the bag of fentanyl being hers came after they took her out of the vehicle, brought her out of the vehicle, which I would suggest is initiating interrogation. And I think there was some discussion about what they had found, and that's when she said that bag of fentanyl was hers. So was that an unprompted response by her, or was that in response to the question? That would have been in response to interrogation, because at that point they had began questioning her, particularly by asking for the combination of the safe, and removing her from the car, and bringing her back to the situation, and discussing, or letting her at least know what they had found in the house. But for that, we would need the district judge to make findings, and weigh the evidence, and the credibility, and everything, which is not present on the record, correct? Right. The only issue for your honors to decide is, did she unambiguously invoke her right to counsel at the start of this interrogation? And that's the issue we're asking the court to decide here today. I see I have about 30 seconds left, so if there's any final questions, I'd be glad to answer them. If not, I'll just rest on the argument in the brief. Thank you. May it please the court, good morning. My name is Lindsay Feinberg. I'm here this morning on behalf of the government. The district court properly denied Ms. Cowett's motion to suppress the statement she made to law enforcement over the course of two days, because she failed to ever unambiguously, or unequivocally, invoke her right to counsel. There's been some discussion of the exchange that took place here, and as the court is aware, the critical question when we're talking about invocation, is what leads up to the statement. Opposing counsel points to three places in an approximately 20 second exchange between Lieutenant Gattiardi and Ms. Cowett, where the suggestion is that Ms. Cowett unequivocally and unambiguously invoked her right to counsel. It's worth taking a second to review what those did. They went to Ms. Cowett's house to execute a search warrant. That search warrant gave them permission to search the vehicles at the house, the residents, her phone. And while they were doing that, Lieutenant Gattiardi took Ms. Cowett into his police vehicle, the exchange's audio and video recorded, and he begins to read her Miranda. She's handcuffed at the time, there's no question that she's in custody. As Lieutenant Gattiardi tells her, and if you decide to answer any question now, with or without a lawyer present, you have the right to stop answering at any time until you can talk to a lawyer. Do you understand that? Instead of responding yes or no, Ms. Cowett responds, I guess my best bet would be probably to not talk until I have a lawyer. So we have this in front of us, so we know what the conversation was. What do you make of the fact that the first two answers she gets is, I'd probably not talk to a lawyer. And then when he presses, she drops the probably from her final answer. What weight should we give to that? I think the court needs to look at the totality of what was said, Your Honor. And initially, it's very clear. I would say the first two statements that are pointed out, as Ms. Cowett suggests, unambiguous and unequivocal are nothing of the sort. Rather, she's thinking out loud. She hasn't made up her mind one way or the other. As the court points out, she uses words like probably. She also uses words like should, which indicate that she is perhaps musing aloud as to what her best option is, but she hasn't made a decision one way or the other. The final sentence she makes, Judge Chioda, that you point out, is, I guess not. I guess I'll wait until I have a lawyer. Tellingly, she makes the statement after evidencing that she hasn't made up her mind. And the I guess not, the I guess I'll wait until I have a lawyer, the district court found to be controlling here, because it's not merely throat clearing. Rather, we're... So what do you... What do you make... So the question the lieutenant asks her is, that third time, right, where she also leaves the probably out, is, do you wanna answer any questions? And she says, I guess not. What weight do we give to the I guess not, then accompanied by the I guess I will wait until I have a lawyer? I think read in context, Your Honor, looking at what came before, which is what we do when we're looking at an invocation, the court's conclusion needs to be, as the district court's conclusion was, that at no point did Ms. Cowett unequivocally demand the assistance of a lawyer. At no point did she say that she needed a lawyer present to answer any further question. It's unclear. And I think, giving the plain language, the word, yes, which other circuits have done, it's not mere throat clearing. Rather, it's an expression of uncertainty. It's in the vein, I would suggest, of a might, a maybe, a perhaps. It matters. If the goal is to give the ordinary meaning to the words that people use, we don't get to just pick and choose which words we give meaning to. We give meaning to all of it. Let me read this to you a little differently, substituting by analogy, where he says, so do you want... He's serving ice cream. Do you want vanilla or chocolate? She says, I probably want vanilla. And then he says, well, what do you want? And she says, well, thinking about it, I would probably want vanilla. And then he says, okay, I'm asking you. That's up to you. That's up to you. Do you want vanilla or chocolate? I guess I'll have vanilla. And he then grabs the scoop and takes the vanilla, puts it in a dish and hands it to her. And she voices no objection to what he's just done. I think it would be pretty clear she was making an announcement that she wanted vanilla. Unless you disagree with that, how is this different? In other words, if we factor in the way she, not only just what she said, but how she reacted when the officer clearly interpreted in her presence what she said in a way that does seem to say he understood her as saying she didn't want... She did want a lawyer. I think, Judge Gatta, that gets back to the point you made with my colleague previously, which is the double edged sword of looking at what an objective versus subjective. So it's clear here that Lieutenant Gattardi, and he testifies to this at the suppression hearing, he felt as though she was leaning toward, that was the language he used, invoking. So he didn't ask her any further questions. He didn't ask her another question for the remainder of the exchange. She made admissions, she made statements, but those were unprompted by interrogation, questions. But what I would add, hasten to add, is the importance of what objective, what the objective test adds here, is perhaps by taking the scoop of vanilla, putting it in front of her, one may assume that subjectively, she wanted vanilla ice cream. But we don't look at what a defendant may have subjectively wanted. We look at what the scooper, here, an objective officer, believed and could have believed. Well, if we do that, then why did he give her vanilla? Why did he say he clearly indicated he understood what she was saying is, okay, so it's gonna happen. That's fine. That's your right and that's super. If we really are looking at what the officer believes, it seems you've dug yourself something of a hole. I thought your position was that we don't take the subjective belief of the officer necessarily. We ask what a reasonable officer would have done. So I'm not saying that we should defer to his subjective belief. I'm saying, though, that his manifestation of that subjective relief in her presence, resulting in no protest from her, didn't that, if there was any need to clarify what she said, didn't that clarify? Perhaps I spoke inartfully before. My position is exactly as you laid it out, Judge Chiara. What matters here is the objective test. In so far as the court is inquiring what we make of his actions after the fact, I think the question becomes whether we're talking about invocation or whether we're talking about waiver, which are two distinct inquiries, right? So if Ms. Cowett had, by making the statement, I'll wait until I have a lawyer, focusing on that third statement and what comes next, if that was an invocation, then what the officer did here was exactly right. He didn't ask any further questions. But then what that leads into is some of the other questions, which is, did she subsequently waive? Now, tellingly, after this, I guess not, I guess I'll wait until I have a lawyer, while I understand it's distinct from invocation, the next thing that happens is the officer explains to her what is transpiring, why there are people at her house, what the attorney interjects, unprompted, about charges and how she avoids charges or gets charges. And that happens within a moment of this initial exchange. So if we're going to look at what happens after the statement, then we're talking about the waiver versus the invocation. But that would follow, and it would suppose she unequivocally asked for a lawyer, and no doubt about that. And the officer then gives her a long explanation of rights and what's going to happen and what's going to have the investigation. And it mentions charges. And she simply asks for clarification and says, well, what are the charges? When do I find out about the charges? Are you suggesting that would be a waiver of the previously invoked right to consult with a lawyer? No, Your Honor. But I do think it's distinct from the sort of clarifying question that courts have focused on in the past. Some of those include things that have nothing to do with the investigation at all. I need to use the bathroom. May I have some water? Something like that. I do think by reopening the conversation to the nature of why they're here, to the criminal investigation, while it may be not standing alone a waiver, it is certainly indicative that Ms. Cowett understood that she could talk or not talk to the officers who were at her house. And nevertheless, for whatever reason, made the decision to make a series of statements over the course of the time that they were executing the search warrant, over the course of the time she was being transported to the jail, and the next day when she was and waived a second time. And those were all factors that the district court put weight on. Properly so, I think, under both Supreme Court and First Circuit precedent. Once someone has invoked the right to lawyer, can the officers entice them to waive it? No, Your Honor. They certainly cannot. So what was the purpose of his long litany of the things that were going to happen if she wasn't cooperating? Lieutenant Cattardi testified at the suppression hearing, and this is in the record, Your Honor, that it's his usual practice as someone with 38 years of law enforcement experience to explain this to people. Because oftentimes, in his experience, people are curious as to why the police are at my house, what are they doing, what is going to happen next. And so here I think it's pretty clear that, and I think there's an actual exchange in Lieutenant Cattardi's testimony where he was asked if he was doing this to cajole her, or to induce her to make admissions. And he made clear on the record that he did not. Let me ask, let's assume we find in Ms. Cowett's favor as to the ambiguity, would we still have, as counsel said, opposing counsel, that we'd have remand for the other issue as to whether the statements were voluntary? That is one avenue forward here, yes, Your Honor. I will add that the second holding Judge Walker made is that it was a knowing and voluntary waiver. That's the second part of his analysis. So under this court's precedent, of course, you can affirm for any reason supported in the record. And because the district court has already made a finding, I see I'm out of time, may I finish? You can finish. Thank you. That her waiver was knowing and voluntary, that would be another basis for the court to affirm here. Did the district court's, unclear to me from the district court's opinion whether it actually found as an alternative grounds for his holding a waiver. It seemed to say it wasn't, then it seemed to say in a footnote that maybe it was. I, I take Your Honor's point. And insofar as there's ambiguity, the government has no objection to remanding to the district court to clarify. There is a second part of the analysis where the finding seems to be that it was a knowing and voluntary waiver on Ms. Calwett's part, but certainly reasonable minds could disagree, Your Honor. Let me ask you, Judge Walker, I believe also, he made a finding that Ms. Calwett was competent. Am I correct? Yes, Your Honor. Thank you. And if the court has no further questions, the government would ask that you affirm. Thank you. Thank you, counsel.